# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY JACQUES, | Case No. 1:12-cv-00821-SAB |
| Plaintiff, | ORDER PARTIALLY GRANTING PLAINTIFF'S MOTION TO AMEND |
| v. | ECF NO. 64 |
| BANK OF AMERICA CORPORATION, et al., | |
| Defendants. | |

On May 13, 2013, Plaintiff Troy Jacques ("Plaintiff") filed a motion requesting leave to file a fourth amended complaint. (ECF No. 64.) A hearing on the matter took place on June 19, 2013 at 12:15 p.m. in Courtroom 9. Counsel Stephen Cornwell appeared in person for Plaintiff. Counsel Patricia Riordan appeared by telephone for Defendant Bank of America Corporation a.k.a. Bank of America N.A. ("BoA").

For the reasons set forth below, the Court partially grants Plaintiff's motion to amend. The Court will permit Plaintiff to amend his complaint to assert additional claims against BoA. However, the Court will not permit Plaintiff to amend his complaint to join Danny Villacis as a defendant.

/ / /

/ / /

/ / /

# I.

# BACKGROUND

### A.  Procedural Background

This action was removed from the Superior Court of California for the County of Fresno on May 18, 2012.  (ECF No. 1.)  The original complaint filed in state court named BoA, First Advantage Background Services Corp. ("First Advantage") and Early Warning Services, LLC ("Early Warning") as defendants.  The original complaint contained one cause of action for defamation.

On June 13, 2012 and June 18, 2012, the Court granted motions to dismiss filed by First Advantage and Early Warning.  (ECF Nos. 12, 13.)  On July 12, 2012, Plaintiff filed his First Amended Complaint.  (ECF No. 15.)  The First Amended Complaint also raised one cause of action for defamation against BoA, First Advantage and Early Warning.  On October 29, 2012, Plaintiff's claims against First Advantage and Early Warning were dismissed pursuant to a stipulation signed by Plaintiff.  (ECF No. 34.)

On November 7, 2012, the Court granted a motion to dismiss filed by BoA.  (ECF No. 38.)  On November 21, 2012, Plaintiff filed a Second Amended Complaint.  (ECF No. 39.)  Plaintiff's Second Amended Complaint raised a single cause of action for defamation against BoA, First Advantage and Early Warning.  Plaintiff's claims against First Advantage and Early Warning were voluntarily dismissed on November 28, 2012.[1]  (ECF No. 40.)  BoA filed a motion to dismiss the Second Amended Complaint (ECF No. 41), which was denied on January 9, 2013 (ECF No. 47).  BoA filed an answer on February 5, 2013.  (ECF No. 49.)

In a Joint Scheduling Report filed on February 17, 2013, Plaintiff indicated that he intended to seek leave to amend the Second Amended Complaint.  (ECF No. 51.)  On February 26, 2013, the Court held a scheduling conference.  A scheduling order was issued on February 28, 2013.  (ECF No. 56.)  The deadline for amending the pleadings was set for May 1, 2013.  The discovery deadlines were set for January 21, 2014 (non-expert) and April 1, 2014 (expert), and

---

[1] It is unclear why First Advantage and Early Warning were named as defendants in the Second Amended Complaint after they were previously dismissed by stipulation.

1 the trial was set for October 7, 2014.

2     On March 27, 2013, Plaintiff and BoA filed a stipulation providing that Plaintiff would be permitted to file a third amended complaint if Plaintiff withdrew his motion to strike BoA's affirmative defenses. (ECF No. 57.) Plaintiff filed his Third Amended Complaint on April 4, 2013. (ECF No. 59.) The Third Amended Complaint only names BoA as a defendant and raises four causes of action for defamation, for intentional infliction of emotional distress, for negligent infliction of emotional distress and for a permanent injunction.

    On May 1, 2013, the parties filed a stipulation to continue the deadline for amending the pleadings and to continue BoA's deadline to file a response to the Third Amended Complaint. (ECF No. 61.) The deadline to amend the pleadings was extended from May 1, 2013 to May 13, 2013 and BoA's deadline to answer was extended from May 6, 2013 to May 20, 2013.

    On May 13, 2013, Plaintiff filed the present motion to amend and file a Fourth Amended Complaint. (ECF No. 64.)

    **B.**    **Allegations and Claims in Plaintiff's Proposed Fourth Amended Complaint**

    Plaintiff's Fourth Amended Complaint names BoA and Mr. Villacis as defendants. Plaintiff alleged that he worked at BoA in 2008 and 2009 and Mr. Villacis was Plaintiff's supervisor. (Fourth Am. Compl. ¶ 6.) Plaintiff further alleged that, as a personal banker, Plaintiff's job duties included opening new accounts. (Fourth Am. Compl. ¶ 7.) BoA set quotas on new account activations, including activation of online accounts. (Fourth Am. Compl. ¶ 7.) Plaintiff was given specific instructions on how to activate online accounts for customers so that his branch would receive "credit" for the activation. (Fourth Am. Compl. ¶ 7.) Plaintiff alleges that, in order to pad their numbers for activated online accounts, Plaintiff was instructed to suggest to customers that they use a generic password for their online account to allow Plaintiff to access their new online account and activate it for customers who would not otherwise activate their online accounts. (Fourth Am. Compl. ¶ 8.) Plaintiff further advised the customer to change their password afterward. (Fourth Am. Compl. ¶ 8.)

    In October 2009, Plaintiff left BoA to work at Wells Fargo Bank. (Fourth Am. Compl. ¶ 10.) In April 2011, Plaintiff received a "Pre-Adverse Action Notification" from Wells Fargo

1  advising Plaintiff that his employment status was under review in connection with a security
2  report from First Advantage. (Fourth Am. Compl. ¶ 12.) The security report stated that Plaintiff
3  was involved in an "internal fraud match" incident in September 2008 while employed at BoA
4  which had a "severity" score of 100. (Fourth Am. Compl. ¶ 12.) Plaintiff was fired from Wells
5  Fargo based upon this report. (Fourth Am. Compl. ¶ 14.)

6  Plaintiff alleges that the internal fraud match stemmed from the instructions he received
7  while at BoA pertaining to customer online account activations. (Fourth Am. Compl. ¶¶ 16-18,
8  25.) Plaintiff contends that Plaintiff was utilized as a "scapegoat" for BoA's wrongful practices
9  and made material misrepresentations about Plaintiff's employment history. (Fourth Am. Compl.
10 ¶ 18.)

11 Plaintiff's Fourth Amended Complaint raises seven causes of action against BoA and Mr.
12 Villacis for (1) blacklisting under California Labor Code §§ 1050, et seq., (2) for defamation, (3)
13 for intentional infliction of emotional distress, (4) for negligent infliction of emotional distress,
14 (5) for interference with contract, (6) for breach of the covenant of good faith, and (7) for a
15 permanent injunction and declaratory relief.

16                                    **II.**

17        **LEGAL STANDARDS FOR MOTIONS TO AMEND THE PLEADINGS**

18 "After a party has amended a pleading once as a matter of course, it may only amend
19 further after obtaining leave of the court, or by consent of the adverse party." Eminence Capital,
20 LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (citing Fed. R. Civ. P. 15(a)). "The
21 court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is
22 'to be applied with extreme liberality.'" Eminence Capital, LLC, 316 F.3d at 1051 (quoting
23 Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)).

24 Leave to amend must be given unless reasons exist to deny leave "such as undue delay,
25 bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by
26 amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of
27 the amendment, futility of amendment, etc...." Foman v. Davis, 371 U.S. 178, 182 (1962) see
28 also AmerisourceBergen Corp. v. Dialysist West, Inc., 465 F.3d 946, 951 (9th Cir. 2006)). "Not

1 all of the factors merit equal weight.... [I]t is the consideration of prejudice to the opposing party that carries the greatest weight." Eminence Capital, LLC, 316 F.3d at 1052. "Absent prejudice, or a strong showing of any of the remaining Foman factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." Id. (emphasis in original).

### III.

### DISCUSSION

#### A. Rule 16's Good Cause Standard Does Not Apply To Plaintiff's Motion to Amend

BoA argues that Plaintiff's motion to amend is governed by the more stringent standards of Federal Rule of Civil Procedure 16. (Def. Bank of America, N.A.'s Opp'n to Pl.'s Mot. to File Fourth Am. Compl. and Req. for Sanctions ("Def.'s Opp'n") 4:26-5:24.[2]) BoA cites Johnson v. Mammoth Inc., 975 F.2d 604, 607-608 (9th Cir. 1992), for the proposition that leave to amend should not be granted unless Plaintiff can demonstrate good cause.

Federal Rule of Civil Procedure 16(b)(4) states that modifications to a scheduling order will only be granted "for good cause and with the judge's consent." However, in Johnson, the plaintiff was seeking to amend his complaint to add an additional party after the deadline for amending the pleadings or joining additional parties had passed. The Court held that the more stringent Rule 16 standards applied because the plaintiff was in effect seeking both a modification of the scheduling order in addition to seeking leave to amend his complaint. Johnson, 975 F.2d at 607-608.

The portion of this Court's Scheduling Order quoted by BoA supports the conclusion that Rule 16 good cause standard only applies if a party seeks to amend after the expiration of the deadline for amendments set in the scheduling order. The Scheduling Order states that "all proposed amendments must (A) be supported by good cause pursuant to Fed. R. Civ. P. 16(b) if the amendment requires any modification to the existing schedule." (Scheduling Order 2:13-15 (emphasis added).)

---

[2] Citations to Defendants' opposition will refer to the page numbers as electronically docketed in PDF format, not to the page numbers used on the document itself.

In this case, Plaintiff's motion to amend does not seek modification of the Court's scheduling order. Significantly, BoA already stipulated to a modification of the deadline to amend the pleadings and the Court already granted the stipulation prior to Plaintiff's motion to amend. The original deadline to amend the pleadings, set in the Court's February 28, 2013 scheduling order, was May 1, 2013. (ECF No. 56.) On May 1, 2013, the parties filed a stipulation to extend this deadline to May 13, 2013, which the Court granted the same day. (ECF Nos. 61, 62.) Plaintiff filed his motion to amend on May 13, 2013. (ECF 64.) Accordingly, Plaintiff's motion does not require any modification of the scheduling order. BoA does not contend that amendment will require any other modification of the scheduling order, such as extension of the discovery deadlines or the trial date. Accordingly, the "good cause" standard under Rule 16 does not apply to Plaintiff's motion to amend.

**B.    Plaintiff Should Be Granted Leave to Amend**

Plaintiff's motion to amend is governed by the standards set forth in Foman governing leave to amend. See Foman, 371 U.S. at 182) (factors when considering leave to amend include undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice, futility of amendment, etc.) BoA argues that leave to amend should be denied because Plaintiff caused undue delay, Plaintiff already amended his complaint three prior times, amendment would be prejudicial to BoA, Plaintiff acted with the intent to destroy diversity, and amendment would be futile.

1.    Undue Delay

BoA argues that Plaintiff "already had ample opportunity to amend" and that Plaintiff has already amended his complaint on three prior occasions. BoA further contends that "[n]o new facts have been discovered in this matter." BoA notes that Plaintiff sought leave to amend to add new claims suggested by their new counsel, who recently associated as trial counsel in this matter. BoA argues that Plaintiff's prior counsel was not diligent in asserting these new claims earlier. At the hearing, counsel for Plaintiff confirmed that the new claims now being asserted in the Fourth Amended Complaint are a result of new counsel associating in for Plaintiff and was not the result of new evidence or facts recently discovered.

1  ///

2        The Court finds that Plaintiff's delay in seeking to amend his complaint for the fourth time
3 and seeking to amend one year after initiating this action weighs against granting the present
4 request for leave to amend.  However, the Court notes that, at this time, there is no suggestion that
5 the discovery deadlines and trial date will be disturbed by Plaintiff's request.  At the hearing,
6 Plaintiff's counsel stated that he could "live with" the current case schedule.

7        Accordingly, the undue delay weighs only slightly against Plaintiff's request for leave to
8 amend.

9        2.     <u>Repeated Failure to Cure Deficiencies by Prior Amendments</u>

10        BoA argues that leave to amend should be denied because this is Plaintiff's fourth time
11 amending his complaint.  The Court finds that the fact that this is Plaintiff's fourth amendment
12 weighs in BoA's favor.  Plaintiff failed to assert these claims earlier, evidently because it did not
13 occur to Plaintiff's prior counsel to assert these claims.  Plaintiff retained new counsel who
14 associated into this case on April 15, 2013 (<u>see</u> ECF No. 60) and this motion to amend followed
15 soon thereafter.

16        Accordingly, the repeated failure to cure deficiencies by amendments weighs against
17 Plaintiff's request for leave to amend.

18        3.     <u>Prejudice to BoA</u>

19        BoA argues that Plaintiff's fourth amended complaint would be prejudicial to BoA
20 because it adds a new party to this action who no longer works for BoA and adds claims against
21 BoA for violating the California Labor Code.  (Def.'s Opp'n 7:9-12.)  BoA contends that it
22 already completed its internal investigation of Plaintiff's allegations and it "now would need to
23 start over essentially due to the addition of Danny Villacis and new claims that alter the factual
24 allegations and potential damages." (Def.'s Opp'n 7:13-15.)

25        BoA's arguments pertaining to prejudice are unconvincing because BoA's claim of
26 prejudice is hypothetical and vague.  BoA contends it would need to "start over" with its
27 investigation and defense, but does not explain why the addition of new claims would require a
28 "start over."  BoA does not identify any specific investigation or discovery that would need to be

performed as a result of Plaintiff's new claims. Plaintiff's claims, including the new claims asserted in the Fourth Amended Complaint, all arise from BoA allegedly making false reports regarding Plaintiff's security risk. Accordingly, there is substantial overlap in the investigation and discovery associated with all the claims. BoA's contention that it would have to "start over" appears to be of a minimal concern. While BoA's theory of defense and/or use of affirmative defenses may change, the new claims essentially center around the same facts known from the inception of the case.

While Plaintiff's new claims may require some additional investigation by BoA, BoA does not identify any significant or specific prejudice, such as evidence that has spoiled or gone cold in the time it took Plaintiff to amend. Accordingly, the prejudice factor does not weigh in BoA's favor.

4. Bad Faith

Although BoA does not discuss the bad faith factor in detail, BoA does contend that Plaintiff seeks to amend his complaint with the intent to destroy diversity. (Def.'s Opp'n 8:6-10:3.) BoA notes that the addition of Mr. Villacis as a defendant in this action would destroy diversity because Mr. Villacis and Plaintiff are both citizens of the state of California.

Whether joinder should be denied because it would destroy diversity jurisdiction is an issue considered separately and in more detail below. See discussion, infra, Part III.C. The Court notes that, for the reasons set forth below, the Court will not allow Plaintiff to join Mr. Villacis as a new defendant. There is no suggestion of bad faith with respect to the additional claims raised against BoA. Accordingly, the bad faith factor does not weigh in BoA's favor.

5. Futility of Amendment

BoA argues that leave to amend should be denied because Plaintiff's proposed amendments are futile. BoA contends that Plaintiff's Fourth Amended Complaint fails to state cognizable claims for violation of California Labor Code § 1050, et seq., for negligent interference with contract, for breach of the implied covenant of good faith and fair dealing and for a permanent injunction or declaratory relief.

///

///

### a. Plaintiff's California Labor Code § 1050[3] claim is not futile

BoA contends that Plaintiff fails to state a claim for blacklisting under the California Labor Code because "[t]here are no allegations that any conduct by the Bank or Villacis prevented the employee [i.e., Plaintiff] from obtaining employment. Plaintiff obtained employment with Wells Fargo." (Def.'s Opp'n 10:24-26.)

However, Plaintiff's Fourth Amended Complaint alleges that BoA's actions "preclude[d] any future employment in any banking of financial institution" after Plaintiff was fired from Wells Fargo and "as a proximate result of Defendants' intentional misrepresentations, Plaintiff has been prevented from obtaining employment with any other banking of financial institution..." (Fourth Am. Compl. ¶¶ 29-30.) Accordingly, Plaintiff's Labor Code claim pertains to BoA's actions preventing Plaintiff from obtaining employment after Plaintiff was fired from Wells Fargo. The fact that Plaintiff was able to obtain employment with Wells Fargo prior to BoA's alleged blacklisting is not relevant to Plaintiff's Labor Code claim.

BoA also argues that its statements to Wells Fargo, if any, were privileged, but does not cite any authority supporting the existence of any applicable privilege. (Def.'s Opp'n 10:27-11:3.) BoA cites O'Shea v. General Telephone Co., 193 Cal. App. 3d 1040, 1047 (1987), but does not explain how any of the privileges at issue in O'Shea (privilege for communications in legislative/judicial/or other official proceedings and privilege for communications made without malice to persons interested therein) are applicable in this case.

For the reasons set forth above, BoA has not demonstrated to the Court that Plaintiff's Labor Code claim is futile for purposes of amending Plaintiff's complaint.

### b. Plaintiff's interference with contract claim is not futile

BoA argues that Plaintiff's claim for negligent interference with contract is futile because there is no cause of action for negligent interference with contractual relations under California

---

[3] California Labor Code § 1050 states: "Any person, or agent or officer thereof, who, after having discharged an employee from the service of such person or after an employee has voluntarily left such service, by any misrepresentation prevents or attempts to prevent the former employee from obtaining employment, is guilty of a misdemeanor." California Labor Code § 1054 authorizes a civil action by persons aggrieved by an employer who violates Section 1050.

law. BoA is correct in this regard. See Fitfield Manor v. Finston, 54 Cal.2d 632, 636 (1960). However, while Plaintiff's proposed Fourth Amended Complaint alleges that BoA and Mr. Villacis "negligently interfered with the employment contract," it also alleges that BoA and Mr. Villacis "knew that the Plaintiff was employed by Wells Fargo," "knew that the Plaintiff's employment with Wells Fargo Bank would be disrupted by the false reports of fraud," and "[t]he actions of the Defendants were at least done recklessly and without due care, if not intentionally, as to the probable results of their actions." (Fourth Am. Compl. ¶ 53.) Although there is no cause of action for negligent interference with contract, a cause of action for intentional interference with contract does not require Plaintiff to allege that BoA and Mr. Villacis "act[ed] with specific intent to interfere." Davis v. Nadrich, 174 Cal. App. 4th 1, 10 (2009). Plaintiff need only allege that BoA and Mr. Villacis "knows that the interference is certain or substantially certain to occur as a result of his action." Id. (internal quotations and citations omitted). "The rule applies ... to an interference that is incidental to the actor's independent purpose and desire but known to him to be a necessary consequence of his action." Id. (internal quotations and citations omitted).

At the hearing, Plaintiff's counsel suggested that the use of the word "negligently" was in error. Looking at the allegations as a whole, it appears that Plaintiff can state a cognizable claim for intentional interference with contract. Accordingly, BoA has not demonstrated that Plaintiff's amended claim for interference with contract would be futile claim for purposes of amending Plaintiff's complaint.

        **c.**      **Plaintiff's breach of the implied covenant of good faith and fair dealing claim is not futile**

BoA contends that Plaintiff's breach of implied covenant of good faith and fair dealing claim is barred by the statute of limitations. Plaintiff's cause of action alleges that there was an employment agreement between Plaintiff and BoA and as a part of that agreement, the implied covenant of good faith and fair dealing required BoA to "fully and fairly maintain Plaintiff's personnel file and protect the professional reputation he was building with his experience at [BoA]." (Fourth Am. Compl. ¶ 58.) Plaintiff further alleges that BoA breached this implied

10

covenant by falsely reporting that Plaintiff was a security risk.

BoA contends that Plaintiff's claim is barred because the statute of limitations is two years, Plaintiff's contractual relationship with BoA ended after October 2009 and Plaintiff did not file this action until February 2, 2012.  However, the Court finds that adjudication of the statute of limitations issue is premature.  It is unclear when Plaintiff's claim accrued because the date Plaintiff left his employment at BoA is not necessarily the date BoA made the alleged false security reports.  BoA contends that the latest this claim would accrue would be when Plaintiff left BoA in October 2009.  However, it is unclear whether BoA had a continuing, implied contractual duty not to falsely impugn Plaintiff's work reputation after Plaintiff.  Further, it is unclear whether some form of tolling would apply because Plaintiff did not discover BoA's conduct until April 2011.  For purposes of the present motion to amend, the Court finds that BoA has not demonstrated that Plaintiff's claim for breach of the implied covenant is futile.

### d. Plaintiff's permanent injunction and declaratory relief claim is not futile

BoA argues that Plaintiff's seventh cause of action for a "Permanent Injunction and Declaratory Relief" is futile because, under California law, a permanent injunction is a type of equitable relief, not a cause of action.  (Def.'s Opp'n 12:26-13:4.)  Under California law, to qualify for a permanent injunction, a plaintiff must prove "(1) the elements of a cause of action involving the wrongful act sought to be enjoined ... and (2) the grounds for equitable relief."  San Diego Unified Port. Dist. v. Gallagher, 62 Cal. App. 4th 501, 503 (1998).  BoA does not argue that Plaintiff is not entitled to a permanent injunction.  BoA only argues that Plaintiff improperly characterized his request for equitable relief as a separate cause of action.  Even assuming that Plaintiff's claim for relief is improperly characterized as a separate cause of action, the Court will not deny leave to amend on the grounds of futility based upon such a technical pleading mistake.

BoA also argues that Plaintiff did not seek declaratory relief as to Mr. Villacis.  (Def.'s Opp'n 13:1-3.)  Even if true, this does not support the conclusion that Plaintiff's Fourth Amended Complaint, as a whole, would be futile.

/ / /

/ / /

11

### e. Plaintiff's Fourth Amended Complaint is not futile

For the reasons set forth above, Plaintiff's Fourth Amended Complaint would not be futile because, at this time, the new claims stated therein appear to have merit. Accordingly, this factor weighs in favor of granting leave to amend.

### 6. Plaintiff Should Be Given Leave to Amend

Although the undue delay and repeated failure to cure deficiencies by amendment weigh in BoA's favor, the remaining three factors do not weigh in BoA's favor. Given the policy of "extreme liberality" governing amendments and the presumption of granting leave to amend in the absence of prejudice to the other parties, the Court finds that Plaintiff should be given leave to amend under the Foman factors. See Eminence Capital, LLC, 316 F.3d at 1051-52.

### C. Joinder of Defendant That Would Destroy Diversity Jurisdiction

Although the Court finds that Plaintiff should be granted leave to amend, a separate issue remains regarding whether Plaintiff should be permitted to join a Mr. Villacis as a new defendant in this action despite the fact that Mr. Villacis' joinder would destroy diversity jurisdiction.[4] Joinder of diversity-destroying defendants after remand is governed by 28 U.S.C. § 1447(e): "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." "The language of § 1447(e) is couched in permissive terms and it clearly gives the district court the discretion to deny joinder." Newcombe v. Adolf Coors Co., 157 F.3d 686, 691 (9th Cir. 1998).

In exercising discretion, district courts consider factors such as: (1) whether the party to be joined is needed for just adjudication and would be joined under Federal Rule of Civil Procedure 19(a), (2) whether the statute of limitations would prevent the filing of a new action against the new defendant should the court deny joinder, (3) whether there has been unexplained delay in seeking the joinder, (4) whether the joinder is solely for the purpose of defeating federal jurisdiction, (5) whether the claim against the new party seems valid, and (6) whether denial of

---

[4] Plaintiff's Fourth Amended Complaint alleged that Mr. Villacis is a resident of the County of Fresno, State of California.

joinder will prejudice the plaintiff. Davis v. Tower Select Ins. Co., Inc., No. CIV S-12-1593 KJM-CKD, 2013 WL 127724, at *2 (E.D. Cal. Jan. 9, 2013); IBC Aviation Services, Inc. v. Compania Mexicana de Aviacion, S.A. de C.V., 125 F. Supp. 2d 1008, 1011 (N.D. Cal. 2000); Clinco v. Roberts, 41 F. Supp. 2d 1080, 1082 (C.D. Cal. 1999).

### 1. Mr. Villacis is not an Indispensable Party Under Rule 19(a)

Rule 19(a) does not require Mr. Villacis' joinder for just adjudication. Rule 19(a) states that a party must be joined if "in that person's absence, the court cannot accord complete relief among existing parties" or "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may ... as a practical matter impair or impede the person's ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a).

Complete relief among the existing parties (i.e., between Plaintiff and BoA) can be afforded without Mr. Villacis being joined to this action. Monetary damages would still be available against BoA. The injunctive relief sought by Plaintiff against BoA would remain available irrespective of Mr. Villacis' presence in this action. There is no suggestion that Mr. Villacis claims an interest relating to the subject of the action that would be prejudiced if he were not joined. Accordingly, this factor weighs against joinder.

### 2. The Statute of Limitations May Prevent the Filing of a New Action against Mr. Villacis

At the hearing, counsel for Plaintiff admitted that a separately filed state court action against Mr. Villacis would not be barred by the statute of limitations. Thus, this factor weighs against joinder.

### 3. Plaintiff's Unexplained Delay in Seeking Joinder

BoA argues that Plaintiff waited one year to seek Mr. Villacis' joinder without any apparent explanation. BoA notes that Mr. Villacis was Plaintiff's manager at BoA, a fact which would have been known to Plaintiff when he commenced this action.

///

Plaintiff contends that "[e]vidence Plaintiff's counsel has uncovered and reasonable inference[s] drawn from that evidence suggest that VILLACIS may have purposely sought to injure Plaintiff...." (Reply in Supp. of Mot. for Leave to File Fourth Am. Compl. 4:27-5:1.) At the hearing, Plaintiff's counsel admitted that the additional claims against BoA and Mr. Villacis were simply the result of new counsel's review of the file, and not from any newly discovered facts or evidence.

Plaintiff's explanation regarding the delay in seeking joinder is based on the addition of new counsel. The Court finds that based upon the facts existing here there appears no reason why this potential defendant could have been joined earlier.[5] Accordingly, this factor weighs against joinder.

### 4. Joinder Does Not Appear to be Solely for Purposes of Defeating Diversity Jurisdiction

BoA contends that Mr. Villacis' joinder is intended to defeat diversity jurisdiction. However, crucially, BoA does not identify any particular advantage gained by defeating diversity in this action. Plaintiff's counsel argues that he "is not aware of any particular benefit to pursuing this case in State Court rather than Federal Court" (Reply in Supp. of Mot. for Leave to File Fourth Am. Compl. 5:7-9), a proposition that BoA does not rebut. BoA admits that "it is curious as to why Plaintiff is now choosing to add ... Villacis ... to this action." (Def.'s Opp'n 9:22-23.)

Based upon the foregoing, there is no evidence of improper motive and therefore this factor weighs in favor of joinder.

### 5. Plaintiff's Claims Against Mr. Villacis Appear Valid

Plaintiff's claims against Mr. Villacis appear facially valid. Mr. Villacis was Plaintiff's manager while Plaintiff worked at BoA. Plaintiff alleges that Mr. Villacis instructed Plaintiff to activate customers' online accounts for them using the customer's passwords. Plaintiff further alleges that BoA and Mr. Villacis reported Plaintiff for engaging in severe fraudulent activity

---

[5] Plaintiff's counsel admitted that the addition of Villacis was based upon information and belief and not newly discovered evidence. The Court infers from this that there was no reason why Villacis could not have been joined in the original state court action.

despite the fact that Plaintiff was following the directives given to him by Mr. Villacis.

As discussed above, BoA argued that Plaintiff's new claims are futile, but the Court rejected those arguments. See discussion, supra, Part III.B.5. Accordingly, the Court finds that Plaintiff's defamation claim and other related claims against Mr. Villacis appear valid and this factor weighs in favor of joinder.

### 6.     Denial of Joinder may Prejudice Plaintiff

Plaintiff argues that he would suffer prejudice in incurring additional costs and attorney's fees if he were required to litigate two separate lawsuits concerning the same course of conduct. Accordingly, this factor weighs in favor of joinder.

### 7.     The Court, in its Discretion, Denies Joinder

Three of the six factors weigh in favor of granting Plaintiff leave to join Mr. Villacis as a defendant in this action. However, the three factors that weigh against joinder weigh heavily in the Court's analysis. First, Plaintiff admitted that the statute of limitations would not prevent Plaintiff from filing separate claims against Mr. Villacis in state court. Plaintiff's unexplained one year delay and failure to join Mr. Villacis despite filing three prior amended complaints is particularly troubling. Moreover, Plaintiff has not demonstrated that Mr. Villacis is an indispensable party under Rule 19.

Accordingly, the Court will exercise its discretion and deny joinder of Mr. Villacis in this lawsuit.

### D.     **Sanctions Are Not Appropriate**

BoA argues that, should Plaintiff be granted leave to amend, it should be granted on the condition that Plaintiff pay BoA sanctions in the form of costs incurred as a result of the delay. "[A] district court, in its discretion, may impose costs pursuant to Rule 15 as a condition of granting leave to amend in order to compensate the opposing party for additional costs incurred because the original pleading was faulty." General Signal Corp. v. MCI Telecommunications Corp., 66 F.3d 1500, 1514 (9th Cir. 1995).

In this case, the Court will partially grant Plaintiff's motion to amend with the condition that Plaintiff may not join Mr. Villacis as a defendant in his Fourth Amended Complaint.

Although the Court exercises its discretion in denying joinder, the Court finds no grounds to award BoA costs of sanctions as an additional condition of granting leave to amend. Accordingly, the Court denies BoA's request for sanctions.

## IV.

## CONCLUSION AND ORDER

Based upon the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's motion to amend is PARTIALLY GRANTED (ECF No. 64);

   a. Plaintiff may file a Fourth Amended Complaint solely to add additional claims against BoA; but

   b. Plaintiff may not join Mr. Villacis as a new defendant in the Fourth Amended Complaint; and

2. Plaintiff is directed to file a copy of its Fourth Amended Complaint, in conformance with this order, within seven (7) days.

IT IS SO ORDERED.

Dated: **June 21, 2013**

UNITED STATES MAGISTRATE JUDGE