# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY JACQUES,<br><br>        Plaintiff,<br><br>    v.<br><br>BANK OF AMERICA CORPORATION, et al.,<br><br>        Defendants. | Case No.  1:12-cv-0821-LJO-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANT EARLY WARNING SERVICES, LLC'S MOTION TO DISMISS BE GRANTED<br><br>ECF NO. 107<br><br>OBJECTIONS DUE WITHIN FOURTEEN (14) DAYS |

On October 10, 2014, Defendant Early Warning Services, LLC ("Early Warning") filed a motion to dismiss in this action.  (ECF No. 107.)  Plaintiff Troy Jacques ("Plaintiff") filed an opposition on December 3, 2014.  (ECF No. 116.)  Early Warning filed a reply on December 10, 2014.  (ECF No. 117.)  The hearing on the motion took place on December 17, 2014.  Holly Gaudreau appeared on behalf of Early Warning.  Peter Bradley appeared telephonically on behalf of Plaintiff.

For the reasons set forth below, the Court recommends that Early Warning's motion to dismiss be granted and Plaintiff's claims against Early Warning be dismissed without leave to amend.

/ / /

/ / /

1

## I.

## BACKGROUND

The operative complaint in this action is the Fifth Amended Complaint filed on September 3, 2014. (ECF No. 96.) The Fifth Amended Complaint names Bank of America Corporation ("Bank of America"), Early Warning, and Does 1 through 50 as defendants in this action. (Fifth Am. Compl. ¶¶ 2-4.) Plaintiff alleges that he was employed by Bank of America since 2005, first in a call center and later as a personal banker in the Tower District branch. (Fifth Am. Compl. ¶¶ 5-6.) Plaintiff's manager was Danny Villacis ("Mr. Villacis"). (Fifth Am. Compl. ¶ 6.)

Plaintiff alleges that when he was a personal banker one of his job duties was to open new accounts. (Fifth Am. Compl. ¶ 7.) Plaintiff further alleges that he was instructed to activate online accounts for the bank so that his branch would receive "credit" for customers opening online accounts. (Fifth Am. Compl. ¶ 7.) Accordingly, to ensure that online accounts were activated by customers and the branch received credit for the activation, Plaintiff would suggest to the customer that they use the password "Password One" for their online account so that Plaintiff could activate the online account for the customer, then instruct the customer to change the password later. (Fifth Am. Compl. ¶ 8.)

Plaintiff later applied for employment at Wells Fargo Bank and started working there on October 8, 2009. (Fifth Am. Compl. ¶ 9.) A few days prior to leaving Bank of America, Plaintiff was advised that an investigation was conducted regarding account openings. (Fifth Am. Compl. ¶ 10.) However, at the meeting regarding this investigation, Plaintiff advised someone else that he would be leaving Bank of America soon, and Plaintiff was told that he did not have to participate and was excused. (Fifth Am. Compl. ¶ 10.)

On April 8, 2011, Plaintiff received a "Pre-Adverse Action Notification" from Wells Fargo. (Fifth Am. Compl. 12.) Plaintiff was informed that his employment status was under review due to information in a security report. (Fifth Am. Compl. ¶ 12.) Plaintiff alleges that the security report publishes highly defamatory allegations made by Bank of America regarding an "internal fraud match." (Fifth Am. Compl. ¶ 13.) The report indicated that Plaintiff committed a

1 "severe type" fraud and "was not suitable for employment in any institution in which trust, honesty, integrity, and fidelity were paramount." (Fifth Am. Compl. ¶ 13.) Plaintiff was informed that he would be terminated from employment with Wells Fargo on April 15, 2011. (Fifth Am. Compl. ¶ 14.) Plaintiff contends that Bank of America never gave Plaintiff any opportunity to contest the claims of wrongdoing. (Fifth Am. Compl. ¶ 18.) Plaintiff alleges that the fraud allegations were made by Bank of America in retaliation for Plaintiff's employment with Wells Fargo. (Fifth Am. Compl. ¶ 25.) Plaintiff further alleges that he requested his employee file from Bank of American and the file contained no record of any wrongdoing. (Fifth Am. Compl. ¶ 24-26.) Although the employee file contained no record of wrongdoing, Plaintiff believes that the wrongdoing allege arose from Plaintiff's practice of accessing customers' online banking accounts to ensure they were activated and the branch received credit for the activation, which was a procedure Plaintiff followed at the instruction of his supervisors. (Fifth Am. Compl. ¶ 28.) Plaintiff contends that he was made a "scapegoat" by his superiors after his superiors learned that the procedure was in violation of Bank of America's corporate policies. (Fifth Am. Compl. ¶ 28.)

Plaintiffs' Fifth Amended Complaint raises causes of action under California Labor Code § 1050, et seq. (Blacklisting), defamation, intentional infliction of emotional distress, negligent infliction of emotional distress, interference with contract, breach of the covenant of good faith, violation of 15 U.S.C. § 1681s-2 (Fair Credit Reporting Act) and seeks a permanent injunction and declaratory relief.

Early Warning's motion to dismiss seeks to dismiss all claims against Early Warning. Early Warning contends that Plaintiff fails to state a claim and Plaintiff's claims are barred by the statute of limitations.

## II.

## LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted." A complaint must contain "a short and plain statement of the claim showing that the pleader is

entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true. Iqbal, 556 U.S. at 678-79.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678.

## III.

## DISCUSSION

### A.  Federal Rule of Civil Procedure 41(a)(1)(B)

At the hearing, the Court inquired about the applicability of Federal Rule of Civil Procedure 41(a). Rule 41(a) states:

> **(a) Voluntary Dismissal.**
> **(1) By the Plaintiff.**
> **(A)** *Without a Court Order*. Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:
> **(i)** a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or
> **(ii)** a stipulation of dismissal signed by all parties who have appeared.
> **(B)** *Effect*. Unless the notice or stipulation states otherwise, the dismissal is without prejudice. But if the plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits.

In this case, Early Warning has been voluntarily dismissed from this action twice by Plaintiff. On October 26, 2012, Plaintiff filed a notice of voluntary dismissal with respect to Early Warning, which the Court granted on October 29, 2012. (ECF Nos. 32, 33.) Plaintiff filed a Second Amended Complaint on November 21, 2012, which unambiguously named Early Warning as a defendant.[1] (ECF No. 39.) Soon thereafter, on November 28, 2012, Plaintiff filed

---

[1] At the hearing, Plaintiff's current counsel argued that the Second Amended Complaint was ambiguous with respect to whether Early Warning was named as a defendant because Early Warning was named in the caption but no allegations were alleged against Early Warning. Plaintiff's counsel further argued that the second voluntary dismissal was "ministerial" in nature and filed merely to clarify that Early Warning was not a defendant in the Second Amended Complaint. Significantly, Plaintiff's current counsel was not counsel of record when the Second

a second notice of voluntary dismissal of Early Warning. (ECF No. 40.) Early Warning was absent from this action for approximately 21 months, since November 28, 2012 and until the Fifth Amended Complaint adding them back into this action was filed on September 3, 2014.

In the second notice of voluntary dismissal, Plaintiff stated that Early Warning was dismissed without prejudice. However, the Ninth Circuit has said: "...the label a plaintiff attaches to a second Rule 41(a)(1) dismissal is irrelevant if a subsequent action is filed 'based on or including the same claim,' because Rule 41(a)(1) itself instructs that such a dismissal 'operates as an adjudication upon the merits.'" Commercial Space Management Co., Inc. v. Boeing Co., Inc., 193 F.3d 1074, 1080 (9th Cir. 1999).

The Court finds that under Rule 41(a)(1)(B), the second voluntary dismissal of Early Warning operated as an adjudication on the merits. Accordingly, Plaintiff is barred from prosecuting the same claims against Early Warning in its Fifth Amended Complaint.

**B.    Statute of Limitations**

Early Warning also argues that Plaintiff's claims are barred by the statute of limitations. Plaintiff does not dispute Early Warning's arguments that the statute of limitations for Plaintiff's claims are either one or two years long. Early Warning argues that the conduct alleged in the complaint took place in April 2011, whereas Plaintiff filed the Fifth Amended Complaint adding Early Warning as a defendant on September 3, 2014.

Early Warning was named as a defendant in original complaint filed in state court on February 23, 2012 and removed to this Court on May 18, 2012. (ECF No. 1.) The Court granted Early Warning's motion to dismiss the claims against it on June 13, 2012 and granted Plaintiff leave to amend those claims. (ECF No. 12.) Plaintiff filed an amended complaint on July 12, 2012. (ECF No. 15.) Early Warning filed a motion to dismiss on October 1, 2012. (ECF No. 18.) However, as noted above, before the motion to dismiss was ruled upon, Plaintiff filed a

---

and Third Amended Complaints were filed, having substituted into this action in August 2013. Accordingly, Plaintiff's counsel's arguments appear to be speculating as to the intent of Plaintiff's prior counsel in filing the second voluntary dismissal. Further, Plaintiff's counsel appears to confuse the Second Amended Complaint with the Third Amended Complaint, as the Second Amended Complaint clearly named Early Warning as a defendant, whereas the Third Amended Complaint was the pleading that was ambiguous with respect to whether any claims were raised against Early Warning.

stipulation to dismiss the claims against Early Warning, which the Court granted on October 29, 2012. (ECF Nos. 32, 33.)

Plaintiff filed a Second Amended Complaint on November 21, 2012. (ECF No. 39.) The Second Amended Complaint named Early Warning as a defendant. However, Plaintiff soon after filed a notice of voluntary dismissal of the claims against Early Warning. (ECF No. 40.)

Plaintiff filed a Third Amended Complaint on April 4, 2013. (ECF No. 59.) Although Early Warning was listed in the caption of the Third Amended Complaint, no claims were asserted against it. Plaintiff filed a Fourth Amended Complaint on June 25, 2013. (ECF No. 72.) The Fourth Amended Complaint did not state any claims against Early Warning.

Plaintiff argues that his claims against Early Warning are not barred by the statute of limitations because the Fifth Amended Complaint "relates back" to the earlier pleadings for purposes of determining whether the statute of limitations applies. Relation back is governed by Federal Rule of Civil Procedure 15(c) which states:

> **(c) Relation Back of Amendments.**
> **(1) When an Amendment Relates Back.** An amendment to a pleading relates back to the date of the original pleading when:
> **(A)** the law that provides the applicable statute of limitations allows relation back;
> **(B)** the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading;[2] or
> **(C)** the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> **(i)** received such notice of the action that it will not be prejudiced in defending on the merits; and
> **(ii)** knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Early Warning argues that the claims against Early Warning raised in the Fifth Amended Complaint cannot relate back to the earlier pleadings because Early Warning was named as a defendant in the prior claims and dismissed by Plaintiff.

///

---

[2] Plaintiff makes no argument that Federal Rule Civil Procedure 15(c)(1)(B) applies. Accordingly, the Court will not address the issue.

Plaintiff argues that relation back applies under subparagraph (A) because California law provides for relation back. See Butler v. National Community Renaissance of California, 766 F.3d 1191, 1200 (9th Cir. 2014). Specifically, Plaintiff argues that Early Warning was named as a "Doe" defendant in the original complaint, and the Fifth Amended Complaint relates back because it substitutes Early Warning as the "Doe" defendant in the original complaint.

Plaintiff relies upon Parker v. Robert E. McKee, Inc., 3 Cal. App. 4th 512 (1992), in support of his argument. In Parker, the court recognized that under California Code of Civil Procedure Section 474, a plaintiff may sue a defendant by a fictitious designation, such as "Doe." Id. at 515-16. Moreover, where a defendant is sued by a fictitious designation "...amendment [of the complaint] is permitted, even though the plaintiff knew a defendant's name, if plaintiff was ignorant of the facts giving rise to a cause of action against that defendant." Id. at 516 (citing Mishalow v. Horwald, 231 Cal. App. 2d 517, 521-522 (1964); Wallis v. Southern Pac. Transportation Co., 61 Cal. App. 3d 782, 786 (1976)). "If the amended pleading involves the same general set of facts, it relates back to the filing of the original complaint so as to satisfy the statute of limitations." Id. (citing Barrows v. American Motors Corp., 144 Cal. App. 3d 1, 7 (1983)).

In Parker, the court recognized that relation back can apply even when the plaintiff named the defendant in the prior complaint, but "...when the plaintiff later discovered that a person whose name was known had a different legal capacity." Parker, 3 Cal. App. 4th at 518 (citing Larson v. Barnett, 101 Cal. App. 2d 282, 289 (1950)). However, the pleadings in this case do not show that Plaintiff discovered that Early Warning had a different legal capacity.

In this case, the original complaint did not state cognizable claims against Early Warning, as found by the Court in its order granting Early Warning's May 25, 2012 motion to dismiss. The original complaint only vaguely alleged that Early Warning "caused to be published, and/or republished ... false and defamatory statements...." (See Order on Early Warning's Motion to Dismiss 4:12-15.) The Court determined that this vague allegation was insufficient to support a claim.

///

7

1    The First Amended Complaint filed on July 12, 2012 alleges that Bank of America
2 falsely accused Plaintiff of fraud, reported the fraud to Early Warning, and Early Warning
3 published a report pertaining to the fraud, which were accessible to subscribers of Early
4 Warning's services. (Am. Compl. for Damages for Defamation ¶¶ 15-18. 21, ECF No. 15.)

5    Plaintiff contends that he was ignorant of pertinent facts regarding Early Warning's
6 connection to Plaintiff's claims. Specifically, Plaintiff argues that he did not know that Early
7 Warning "was the author and fabricator of the claim that Jacques had a rating of 'Severity – 100'
8 with respect to his alleged fraudulent activity." (Pl.'s Opp'n to Def. Early Warning Services,
9 LLC's Mot. to Dismiss 9:17-20.) However, the Court finds this newly discovered fact does not
10 trigger the relation back doctrine because this fact does not change Early Warning's legal
11 capacity. Plaintiff's claims against Early Warning in the Fifth Amended Complaint are identical
12 to Plaintiff's claims against Early Warning raised in the prior pleadings. The fact that Early
13 Warning authored the severity rating does not change the nature of the claim, it only provides an
14 additional factual detail that is not inconsistent with Plaintiff's theory against Early Warning
15 raised in the earlier pleadings.

16    Plaintiff also contends that Early Warning has not met its burden in demonstrating that
17 Plaintiff had knowledge of the relevant facts pertaining to the claims against Early Warning. The
18 Court disagrees. As noted above, the facts alleged in Plaintiff's earlier pleadings are sufficient to
19 establish Plaintiff's knowledge of the facts relevant to the claims against Early Warning. The
20 gist of Plaintiff's claims is that Early Warning published reports accusing Plaintiff of fraudulent
21 activities and identified Plaintiff as a security risk. This is the same legal theory and general set
22 of facts presented by Plaintiff in the earlier pleadings.

23    Finally, Plaintiff argues that Early Warning republished the allegedly defamatory
24 statements against Plaintiff, thereby restarting the statute of limitations. Generally, under
25 California law, the single publication rule states that publication generally occurs on the first
26 general distribution of the publication to the public and the cause of action accrues at that time,
27 regardless of when Plaintiff became aware of the publication. Canatella v. Van De Kamp, 486
28 F.3d 1128, 1133 (9th Cir. 2007); see also Cal. Civ. Code § 3425.3. However, "[u]nder the

1 single-publication rule, the statute of limitations is reset when a statement is republished." 2 Yeager v. Bowlin, 693 F.3d 1076, 1082 (9th Cir. 2012). "A statement in a printed publication is 3 republished when it is reprinted in something that is not part of the same 'single integrated 4 publication.'" Id. (quoting Christoff v. Nestle USA, Inc., 47 Cal. 4th 468, 477 (2009)).

5 Plaintiff argues that he was subjected to further and new injury when he was denied 6 employment at Chase Banking. However, being subjected to new or continued injury is not the 7 relevant test under the single publication rule. The relevant inquiry is whether the statement was 8 republished by Early Warning in something that was not part of the same "single integrated 9 publication" that was allegedly made in 2011. Plaintiff alleges no facts in the Fifth Amended 10 Complaint supporting the conclusion that Early Warning republished the defamatory report. 11 Whether Early Warning's actions constitute republication under California law is a conclusion of 12 law which need not be accepted as true at the pleading stage. Ashcroft v. Iqbal, 556 U.S. 662, 13 678 (2009) ("tenet that a court must accept as true all of the allegations contained in a complaint 14 is inapplicable to legal conclusions."); see also Christoff v. Nestle USA, Inc., 47 Cal. 4th 468, 15 477 (2009) (analyzing legal issue of what constitutes a "single integrated publication" in context 16 of single-publication rule).

17 The Court finds that Plaintiff's claims against Early Warning raised in the Fifth Amended 18 Complaint do not relate back under Rule 15(c)(1)(A). The Court further finds that the Fifth 19 Amended Complaint does not allege facts which support the conclusion that Early Warning 20 republished the allegedly defamatory statements. Accordingly, the Court finds that Plaintiff's 21 claims are barred by the statute of limitations.

22 **B. Plaintiff's Blacklisting Claim (Cal. Labor Code § 1050, *et seq.*)**

23 Early Warning argues that Plaintiff fails to state a cognizable claim for blacklisting under 24 California Labor Code Section 1050, *et seq.* Early Warning argues that it is not a proper 25 defendant for this claim.

26 Section 1050 states:

27 Any person, or agent or officer thereof, who, after having discharged an employee from the service of such person or after an 28 employee has voluntarily left such service, by any

9

> misrepresentation prevents or attempts to prevent the former employee from obtaining employment, is guilty of a misdemeanor.

Cal. Labor Code § 1050.

Early Warning argues that Section 1050, by its own terms, only applies to misrepresentations made by employers regarding former employees. Early Warning contends that since Plaintiff was never an employee of Early Warning, no claim is stated.

Plaintiff argues that Section 1050's reference to "any person" means that Section 1050 is not limited to employers. The Court does not accept Plaintiff's statutory interpretation.

Section 1050's reference to "any person" does support the conclusion that Section 1050 applies to Early Warning. However, that does not end the inquiry because, while Section 1050 may apply to Early Warning, it does not necessarily follow that Early Warning violated Section 1050 by the conduct alleged in Plaintiff's complaint.

Substituting "Early Warning" for "any person" in the language of the statute, it reads:

> Early Warning ... who, after having discharged an employee from the service of Early Warning, or after an employee has voluntarily left such service, by any misrepresentation prevents or attempts to prevent the former employee from obtaining employment, is guilty of a misdemeanor.

Plaintiff's complaint does not allege that Early Warning discharged an employee and thereafter made misrepresentations preventing that discharged employee from obtaining employment. Accordingly, while Early Warning may be subject to Section 1050's requirements because they are "any person," Plaintiff's complaint does not allege facts which support the conclusion that Section 1050 has been violated.

Plaintiff cites <u>Smith v. SEIU United Healthcare Workers W.</u>, No. C 05-2877 VRW, 2006 WL 2038209 (N.D. Cal. Jul. 19, 2006), as his "best case" for the proposition that Section 1050 can apply against a non-employer. However, as Plaintiff's counsel appears to have acknowledged during the hearing, this case is not persuasive to the facts of this case. Plaintiff contends that <u>Smith</u> involved a plaintiff who was an employee of one union suing a sister union under Section 1050. However, the opinion states that the defendants in the action were SEIU United Healthcare Workers West ("Local 250") and Sal Roselli, and the opinion clearly states

that the plaintiff "was employed for 18 years by Local 250" and "Roselli was the president of Local 250 and one of [the plaintiff's] supervisors." Id. at *1. Further, the lawsuit arose from Roselli's letter to the international president of the SEIU, which the plaintiff contends violated Section 1050. Moreover, none of the parties even raised the issue of whether Section 1050 could apply to non-employers, most likely due to the fact that that was not an issue under the facts of that case. The Court's discussion of Section 1050 was limited to the plaintiff's argument that Section 1053[3] applied to the facts alleged by the plaintiff. Accordingly, Smith does not support Plaintiff's argument that Early Warning can be held liable for a violation of Section 1050 for their conduct with respect to Plaintiff, when there was no employer-employee relationship between Early Warning and Plaintiff.

At the hearing, Plaintiff argued that the clause "or after an employee has voluntarily left such service" supports the interpretation that Section 1050 applies to non-employers. In other words, Plaintiff argues that "any person" may be liable for blacklisting, if it were done "after an employee has voluntarily left such service." Plaintiff's interpretation ignores that plain meaning of the phrase "such service." The phrase "such service" in Section 1050 clearly refers to the employment relationship identified at the beginning of the statute, namely employment with the "any person" identified in the statute. Thus, Section 1050 applies both in situations where the employer fires the employee from service and where the employee voluntarily leaves service with the employer. Both situations require a preexisting employment relationship between the plaintiff and the defendant. None is alleged in this case.

The Court finds that the plain language of Section 1050 states that it applies only to conduct taken by "any person" against a former employee. Since Plaintiff does not allege that Early Warning took any action against a former employee, Plaintiff fails to state a claim for a violation of Section 1050.

---

[3] California Labor Code § 1053 states, in pertinent part:

> Nothing in this chapter shall prevent an employer or an agent, employee, superintendent or manager thereof from furnishing, upon special request therefor, a truthful statement concerning the reason for the discharge of an employee or why an employee voluntarily left the service of the employer....

1     Alternatively, Plaintiff argues that Early Warning can be liable for aiding and abetting
2 Bank of America's violation of Section 1050.  However, this theory is not alleged in the Fifth
3 Amended Complaint.  Accordingly, the Court need not address this argument at this time.

### C. Plaintiff's Defamation Claim

Early Warning argues that Plaintiff has not alleged sufficient facts to support a claim for defamation.  Early Warning contends that Plaintiff did not allege the publication of a defamatory statement by Early Warning to a third party since the Fifth Amended Complaint alleges that the allegedly defamatory statement that led to Plaintiff's termination at Wells Fargo was based upon a report from First Advantage.

Under California law, the elements for a claim for defamation are 1) a publication, 2) that is false, 3) defamatory, and 4) unprivileged, and 5) that has a natural tendency to injure or that causes special damage.  Taus v. Loftus, 40 Cal.4th 683, 720 (2007).

The Fifth Amended Complaint alleges that Early Warning published reports that Plaintiff's internal fraud score was "Severity-100" and was a high security risk.

- "Plaintiff also has learned that the "Severity-100" ranking is a fraud score that was calculated by Defendant EARLY WARNING SERVICES."  (Fifth Am. Compl.  16.)
- "Plaintiff has undertaken to remove the false and defamatory statements made by BANK OF AMERICA which have appeared in reports from First Advantage and also from Early Warning Services, LLC, to no avail."  (Fifth Am. Compl. ¶ 17.)
- "EARLY WARNING SERVICES' actions were undertaken to promote its own business for profit.  Although Plaintiff engaged in no wrongful conduct, EARLY WARNING SERVICES has not only published that he engaged in internal security fraud but that his conduct had a severity of 100, clearly communicating that Plaintiff was a most high security risk."  (Fifth Am. Compl. ¶ 21.)
- "The reports of BANK OF AMERICA were ultimately reported by First Advantage and EARLY WARNING SERVICES, the latter being supplemented with false allegations of "severity-100", were either made or authorized by these Defendants to prevent Plaintiff from continuing employment in the banking industry."  (Fifth Am. Compl. ¶ 34.)

- "Subsequent to Plaintiff's employment with Defendant BANK OF AMERICA, BANK OF AMERICA and EARLY WARNING SERVICES caused to be published and/or republished such false and defamatory statements about Plaintiff, thereby causing Plaintiff economic and non-economic damage." (Fifth Am. Compl. ¶ 38.)
- "Defendants BANK OF AMERICA and EARLY WARNING SERVICES published the false and defamatory publication to others knowing that subsequent republication to persons interested in Plaintiff's past employment history was reasonably foreseeable." (Fifth Am. Compl. ¶ 39.)

The Court finds that these vague allegations do not meet the plausibility standard established in Ashcroft v. Iqbal, 556 U.S. 662 (2009). Plaintiff has merely provided labels and conclusions in support of its claims against Early Warning. There is little to no factual detail regarding precisely what Early Warning stated in their reports or who the reports were directed to.

The vagueness of Plaintiff's factual allegations with respect to Early Warning implicate several issues with respect to defamation causes of action under California law. As set forth above, two elements of a defamation claim are publication and an unprivileged communication. Plaintiff's failure to identify to whom Early Warning's reports were published or communicated to equates to a failure to establish either element. Since it is unclear who received Early Warning's reports, it is unclear if the reports were "published" or "unprivileged" as a matter of law.

With respect to privileged communications, California Civil Code § 47 states that privileged communications include "a communication, without malice, to a person interested therein...who is requested by the person interested to give the information." Since Plaintiff fails to identify the recipient of Early Warning's report, it is impossible for the Court to conclude that the reports were unprivileged. However, it is worth noting that, presumably, Early Warning provides security reports to clients such as banks regarding the trustworthiness of applicants or employees. Therefore, Early Warning's reports appear to fall within the privilege provided under Section 47.

Moreover, the Court further notes that Plaintiff alleges no facts which plausibly support the conclusion of malice on Early Warning's part. The lack of apparent malice on Early Warning's part can be contrasted with the allegations of malice with respect to Bank of America. Plaintiff alleged that Bank of America maliciously used Plaintiff as a scapegoat to cover-up Bank of America's practice of activating online customer accounts to boost their statistics for new customer account activations. In contrast, Plaintiff alleges no plausible theory of malice on Early Warning's part. Plaintiff alleges that Early Warning's business involved the identification of security threats, but it does not follow that Early Warning would have any incentive to incorrectly identify Plaintiff as a security threat via fraudulent reports.

Plaintiff also alleged that Bank of America's personnel file for Plaintiff contained no evidence of wrongdoing. However, it does not follow that Early Warning acted maliciously simply because Bank of America lacked sufficient evidence of wrongdoing. Plaintiff alleges no facts which show that Early Warning knew that Bank of America possessed no evidence of wrongdoing. Plaintiff does allege that Early Warning's reports were not based on any "reasonable investigation." However, the Court finds that the allegations do not support the conclusion that Early Warning's actions were "malicious" within the meaning of Section 47. See Hailstone v. Martinez, 169 Cal. App. 4th 728, 740 (2008) ("...malice is established by a showing that the publication was motivated by hatred or ill will toward the plaintiff or by a showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights."). Plaintiff's allegation that Early Warning failed to conduct a "reasonable investigation" does not establish malice, as there is no indication that the failure to conduct an independent investigation constituted malice, particularly where Early Warning was simply reporting on reports it received from Bank of America.

Additionally, Plaintiff's allegations regarding precisely what Early Warning published in their reports are also vague. Plaintiff does not provide any specific allegations regarding the content of the Early Warning reports, other than the vague allegation that Plaintiff "engaged in internal security fraud" (Fifth Am. Compl. ¶ 21.) and that Early Warning authored a "Severity-

1  "100" ranking. This is particularly significant, since if Early Warning merely published a report
2  that stated that Bank of America had accused Plaintiff of fraudulent activities, Early Warning
3  statements would not be false and therefore could not support a defamation action.

4        Finally, the Court notes that under California law, a claim for defamation must be based
5  upon a statement of fact which is "provably false." Nygard, Inc. v. Uusi-Kerttula, 159 Cal. App.
6  4th 1027, 1048 (2008) (citing Seelig v. Infinity Broadcasting Corp., 97 Cal. App. 4th 798, 809
7  (2002)). "Whether challenged statements convey the requisite factual imputation is ordinarily a
8  question of law for the court." Nygard, Inc., 159 Ca. App. 4th at 1049 (citing Seelig, 97 Cal.
9  App. 4th at 810). Plaintiff's allegation that Early Warning published a report indicating that
10 Plaintiff presented a security risk appears to be a statement that is not provably false, as it
11 appears to be an opinion regarding Plaintiff's trustworthiness. Plaintiff's vague allegation that
12 Early Warning's report states that Plaintiff "engaged in internal security fraud" is too vague to
13 determine whether the statement is provably false. It is unclear what "internal security fraud"
14 means.

15       Based upon the foregoing, the Court finds that Plaintiff fails to state a cognizable claim
16 for defamation against Early Warning.

17       **D.    Plaintiff's Negligent Infliction of Emotional Distress Claim**

18       Early Warning argues that Plaintiff's Fourth Cause of Action for "negligent infliction of
19 emotional distress" fails to state a claim because "negligent infliction of emotional distress" is
20 not an independent tort under California law and is otherwise duplicative of Plaintiff's
21 defamation claim, as Plaintiff merely alleged that Early Warning breached a duty to not publish
22 defamatory statements regarding Plaintiff. Plaintiff argues that he brings a claim for general
23 negligence, and that the "duty" at issue is Early Warning's duty not to commit defamation
24 against Plaintiff.

25       Plaintiff cites no case which recognizes the existence of a legal duty, in the context of a
26 simple negligence cause of action, apart from Early Warning's duty to not commit acts which
27 would give rise to a cause of action for defamation under California law. Put differently,
28 Plaintiff cites no case which recognizes a claim for negligence in factual circumstances that fall

short of a claim for defamation. Accordingly, Plaintiff's negligence cause of action is duplicative of his defamation cause of action and the Court recommends that the claim be dismissed.

### E. Plaintiff's Tortious Interference With Contract Claim

Early Warning argues that Plaintiff fails to state a cognizable claim for tortious interference with contract because, under California law, such a claim cannot lie if the contract is "at-will." In opposition, Plaintiff contends that he can state a claim for tortious interference with prospective business advantage. In reply, Early Warning argues that Plaintiff cannot state a claim for tortious interference with prospective business advantage because Plaintiff has not plead "an independently wrongful act" by Early Warning.

"[I]n California, the law is settled that 'a stranger to a contract may be liable in tort for intentionally interfering with the performance of the contract.'" Reeves v. Hanlon, 33 Cal. 4th 1140, 1148 (2004) (citing Pacific Gas & Electric Co. v. Bear Stearns & Co., 50 Cal. 3d 1118, 1126 (1990)). "To prevail on a cause of action for intentional interference with contractual relations, a plaintiff must plead and prove (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of that contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." Id. (citing Pacific Gas & Electric Co., 50 Cal. 3d at 1126). Under California law, "interference with an existing contract receives greater solicitude than does interference with prospective economic advantage." Quelimane Co. v. Stewart Title Guaranty Co., 19 Cal. 4th 26, 55 (1998) (citing Della Penna v. Toyota Motor Sales, U.S.A., Inc., 11 Cal. 4th 376, 392 (1995)). Therefore, in a claim for intentional interference with an existing contract, "it is not necessary that the defendant's conduct be wrongful apart from the interference with the contract itself." Id. (citing LiMandri v. Judkins, 52 Cal. App. 4th 326, 343 (1997)).

In Reeves, the California Supreme Court held that the tort of interference with contractual relations may be predicated upon interference with an at-will contract. Reeves, 33 Cal. 4th at 1148. "A third party's 'interference with an at-will contract is actionable interference with the

contractual relationship' because the contractual relationship is at the will of the parties, not at the will of outsiders." Id. (citing Pacific Gas & Electric Co., 50 Cal. 3d at 1127). However, the California Supreme Court went on to state that "an interference with an at-will contract properly is viewed as an interference with a prospective economic advantage...." Id. at 1152. Therefore, "to recover for a defendant's interference with an at-will employment relation, a plaintiff must plead and prove that the defendant engaged in an independently wrongful act-i.e., an act 'proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard'" Id. (quoting Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1159 (2003)).

Presumably, Plaintiff alleges that Early Warning engaged in an independently wrongful act, namely defamation. However, since Plaintiff fails to allege sufficient facts to support a claim for defamation, the Court finds that Plaintiff's intentional interference claim fails for the same reason.

### F. Plaintiff's Fair Credit Reporting Act Claim

Early Warning argues that Plaintiff's claim under the Fair Credit Reporting Act ("FCRA") fails because the FCRA does not apply to Early Warning.

Plaintiff's seventh cause of action alleged a violation of 15 U.S.C. § 1681s-2, which states, in pertinent part:

> (a) Duty of furnishers of information to provide accurate information
> (1) Prohibition
> (A) Reporting information with actual knowledge of errors
> A person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate.
> (B) Reporting information after notice and confirmation of errors
> A person shall not furnish information relating to a consumer to any consumer reporting agency if--
> (i) the person has been notified by the consumer, at the address specified by the person for such notices, that specific information is inaccurate; and
> (ii) the information is, in fact, inaccurate.
> (C) No address requirement
> A person who clearly and conspicuously specifies to the consumer an address for notices referred to in subparagraph (B) shall not be subject to subparagraph (A); however, nothing in subparagraph (B) shall require a person to specify such an address.

      (D) Definition
For purposes of subparagraph (A), the term "reasonable cause to believe that the information is inaccurate" means having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information.

Plaintiff contends that a "furnisher" is a source that provides credit information to a credit reporting agency, citing Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1153 (9th Cir. 2009). However, the Fifth Amended Complaint contains no factual allegations that Early Warning was a source that provides credit information to a credit reporting agency. Accordingly, Plaintiff's claim under Section 1681s-2 fails.

Plaintiff alternatively argues that Early Warning is a credit reporting agency or consumer reporting agency that can be liable under 15 U.S.C. § 1681e for providing a "technically accurate" report that "misleads" third parties. Plaintiff also argues that Early Warning could be liable under Section 1681i for failing to conduct a reasonable investigation regarding disputed information in Plaintiff's record. However, the Fifth Amended Complaint does not raise any claims under Section 1681e or 1681i and, therefore, Plaintiff's argument is immaterial. Moreover, "consumer reporting agency" is defined as:

> ...any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

15 U.S.C. § 1681a(f). The Fifth Amended Complaint contains no factual allegations that Early Warning is a "consumer reporting agency" within the meaning of the Fair Credit Reporting Act. Accordingly, Plaintiff's claim would fail even if the Fifth Amended Complaint could be construed as raising a claim under Section 1681e or Section 1681i.

### G. Plaintiff's Requests for Equitable Relief

Early Warning argues that Plaintiff is not entitled to equitable relief under the Fair Credit Reporting Act. In response, Plaintiff does not dispute Early Warning's contention and instead argues that equitable relief is appropriate under Plaintiff's other causes of action. Since, for the

reasons discussed above, the Court finds that Plaintiff fails to state any cognizable claims for relief, Plaintiff's request equitable relief will be dismissed as well.

### H. Leave to Amend

"Generally, Rule 15 advises the court that 'leave [to amend the complaint] shall be freely given when justice so requires.' This policy is 'to be applied with extreme liberality.'" Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 712 (9th Cir. 2001)). The factors the Court should consider in deciding whether to grant leave to amend include undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment. Id. at 1052.

In this case, the Court finds undue delay, bad faith and dilatory motive on the part of Plaintiff. Incredibly, this case has been pending in this Court since May 2012 (and was filed in state court in February 2012) and has not moved past the pleading stage despite the six complaints filed by Plaintiff. From the Court's review of the six complaints, little to no progress was made in discovery or in the prosecution of these claims, as Plaintiff the material facts alleged in the six complaints has changed very little over the years. Moreover, on two prior occasions, Plaintiff filed voluntary dismissals of the claims against Early Warning, only to inexplicably revive those claims later on. The third and fourth amended complaints raised no claims against Early Warning, yet Plaintiff dragged Early Warning back into this action in the Fifth Amended Complaint, after Early Warning was absent from litigation for approximately ten months.

Moreover, any further leave to amend appears to be futile. As discussed above, Plaintiff's claims are barred under Rule 41(a) because Plaintiff voluntarily dismissed his claims against Early Warning on two prior occasions and the second occasion operated as a dismissal on the merits. Moreover, Plaintiff's claims appear to be barred by the statute of limitations.

Based upon Plaintiff's dilatory conduct, undue delay and the futility of amendment, the Court finds that Plaintiff should not be given leave to amend its claims against Early Warning.

IV.

## CONCLUSION AND RECOMMENDATION

Based upon the foregoing, the Court finds that the claims against Early Warning in the Fifth Amended Complaint are barred by the statute of limitations. The Court further finds that Plaintiff fails to state any cognizable claims against Early Warning. Finally, the Court finds that leave to amend should be denied due to Plaintiff's dilatory conduct, undue delay and bad faith conduct as well as the futility of any amendment.

Accordingly, it is HEREBY RECOMMENDED that:

1. Early Warning's motion to dismiss be GRANTED; and

2. Plaintiff's claims against Early Warning be DISMISSED without leave to amend.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, __ F.3d __, __, No. 11-17911, 2014 WL 6435497, at *3 (9th Cir. Nov. 18, 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **December 18, 2014**

UNITED STATES MAGISTRATE JUDGE